IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

GLORIA LUSTER o/b/o
ALEXIS LUSTER                                                              PLAINTIFF

        v.                            Civil No. 04-6104

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

The plaintiff in this case, Gloria Luster (hereinafter "plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim on behalf of her minor daughter, Alexis Luster (hereinafter "claimant"), for supplemental security income (hereinafter "SSI") benefits under § 1602 of Title XVI, *42 U.S.C. § 1381a*. Each party has filed an appeal brief (Doc. #4 & 5), and this matter is now ready for consideration. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The history of the administrative proceedings is contained in the appeal briefs and in the ALJ's written decision and will not be recounted here except as necessary. However, it should be noted that plaintiff filed her application on November 26, 2001(T. 55-57). An administrative hearing was held on August 8, 2003 (T. 27-36), after which the ALJ issued an unfavorable decision date April 17, 2004 (T. 15-22). Plaintiff requested review of the hearing decision, and by Order entered July 30, 2004, the Appeals Council denied the request (T. 7-9).

The plaintiff asserts disability due to claimant's diabetes mellitus and anxiety/depression. The issue before this Court is whether the Commissioner's decision is supported by substantial record evidence.

The ALJ followed the new sequential evaluation process, set forth in *20 C.F.R. § 416.924*. Under the new standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.*

When passing the new law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

*142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996)*.

Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More

specifically, a determination that a child is disabled requires the following three-step analysis. See *20 C.F.R. § 416.924(a)*. First, the ALJ must consider whether the child is engaged in substantial gainful activity. See *20 C.F.R. § 416.924(b)*. If the child is so engaged, he or she will not be awarded SSI benefits. See *id.* Second, the ALJ must consider whether the child has a severe impairment. See *20 C.F.R. § 416.924(c)*. A severe impairment is an impairment that is more than a slight abnormality. See *id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, *20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")*. See *20 C.F.R. § 416.924(c)*. Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. See *20 C.F.R. § 416.924(d)*. Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. See *20 C.F.R. § 416.926a(b)(1)*. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. See *20 C.F.R. § 416.926a(b)(1)*.

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. See *20 C.F.R. § 416.926a(b)(2)*. A marked limitation is an impairment that is

"more than moderate" and "less than extreme."  A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities.  See *20 C.F.R. § 416.926a(e)(2)*.  An extreme limitation is "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities.  Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  See *20 C.F.R. § 416.926a(e)(3)*.

**Discussion:**

This court reviews a decision by an ALJ "to determine whether it is supported by substantial evidence on the record as a whole." *Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir.2000); 42 U.S.C. § 405(g).*  Our scope of review is narrow; we must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart 335 F.3d 726, 729 (8th Cir.2003);Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998)*.  Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision. *Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir.2001)*.  The issue on appeal is whether there is substantial evidence to support the ALJ's determinations under the three-step sequential test.  The undersigned employs the same three-step sequential test as the ALJ to evaluate the evidence and the alleged disability.  Because plaintiff does not contest the ALJ's finding regarding substantial gainful activity, we bypass the first step.  Under the second step, we agree that claimant's impairments are severe.  Consequently, the pivotal issue remains the third step, namely, whether there is substantial evidence in the record to support the finding that

claimant's impairments do not rise to the medical or functional level of severity necessary to equal a disability listed in Appendix 1 of 20 C.F.R. § 404, Subpart P. See *Pepper ex rel. Gardner v. Barnhart 342 F.3d 853, 855 (8th Cir.2003)*.

The regulations provide:

(a) *Basic considerations.* We consider all relevant information (*i.e.,* evidence) in your case record. The evidence [] may include information from medical sources, such as your pediatrician, other physicians, psychologist, or qualified speech-language pathologist; other medical sources not listed in § 416.913(a), such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as your parents, teachers, and other people who know you.

   (1) *Medical evidence -- (i) General*. Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings. The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents. It may also include opinions from medical sources about the nature and severity of your impairments. (*See* § 416.927).

   *(ii) Test scores.* We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation. Therefore, we will not rely on test scores alone when we decide whether you are disabled. (*See* § 416.926a(e)) for more information about how we consider test scores.

*20 C.F.R. § 416.924a(a)(1)(i)-(ii)*.

At the time of the administrative hearing, the claimant was 14 years old and was in the eighth grade (T. 29). The plaintiff, claimant's mother, testified at the hearing and was not represented by counsel (T. 27). Plaintiff argues: the ALJ erred in proceeding with a hearing despite the claimant's failure to knowingly and intelligently waive her right to counsel; and, erred in finding that the claimant was not markedly impaired in two domains, and therefore was not disabled (Doc. 4, p. 2).

As has been noted, there are several ways to demonstrate that a child is disabled. *20*

C.F.R. § 416.926a(b). If the ALJ had found that the claimant had an extreme impairment in one functional area or marked impairments in two functional areas, then she would have been entitled to benefits. *20 C.F.R. § 416.926a(d).*

Here, the ALJ assessed that the claimant has: no limitation in the domain of acquiring and using information; no limitation in the domain of attending and completing tasks; no limitation in the domain of interacting and relating to others; no limitation in the domain of moving about and manipulating objects; no limitation in the area of caring for herself; and, a less than marked limitation in the area of health and physical well being (T. 21). The ALJ's findings are supported by substantial evidence of record.

Plaintiff asserts that the ALJ did not sufficiently question the claimant or claimant's representative in regard to all of claimant's medical conditions, disabilities, limitations and restrictions, and therefore, the record is incomplete. Further, she states:

> This is a classic case where prejudice is likely to occur because the Claimant was unable to retain legal representation. The proper and legal remedy in this case would be to remand Claimant's claim for an additional hearing to insure that the Claimant has received a fair and impartial hearing.

(Doc. #4, p. 3). However, the record reveals that at the administrative hearing, the ALJ specifically addressed this issue, noting that plaintiff did not have representation, and pointing out that while representation was no necessary, she did have the right to representation, if she so desired. Plaintiff acknowledged this right, and stated that she wished to go ahead with the hearing without representation. There is no mention by plaintiff of an inability to obtain representation (T. 27).

Further, the record shows that on July 16, 2003, the plaintiff received a Notice of

Hearing which clearly explains the right to counsel (T. 50-51). *Wingert v. Bowen, 894 F.2d, 296, 298 (8th Cir.1990).* Additionally, the record reflects that plaintiff appears to have experienced no difficulty retaining counsel, to represent her before this court upon appeal. Thus, plaintiff's contention with respect to this issue is without merit.

Plaintiff also asserts that the ALJ committed error in his findings in the six applicable domains. The record contains numerous notations indicating that the claimant's impairments are controlled by medication (T. 102, 149, 148, 215, 217, 209, 208, 206, 198, 194, 188, 187, 234). Elsewhere in the record, it is reported that claimant's grades are good/average, and she is in regular classes (T. 98, 116, 29, 85, 215, 158, 210, 209, 205, 180). Documentation submitted by plaintiff, in conjunction with her application indicates that claimant: needs glasses to see; has no difficulty hearing or communicating; gets tired quickly and has to have her medication and a snack nearby, when performing daily activities; has no limitations in understanding and using what she has learned; can run, walk, dance and play some sports; although she has mood changes, she has friends her own age, generally gets along with plaintiff, siblings, teachers and other adults; can get to school on time, study and do homework, take her needed medication, keep out of trouble and ask for help, when needed; has trouble with personal hygiene, washing and putting away clothes, doing her chores, cooking, using public transportation on her own, accepting criticism or correction, obeying rules and avoiding accidents; can complete homework, but has difficulty staying on task in other areas; and, when at home, has difficulty settling and rocks back and forth all the time (T. 89-96).

The claimant was referred to Stepping Stone Clinic on or about August 17, 2001 (T. 181), due to frequent daydreaming, inattentiveness and her habit of rocking back and forth,

when at home and seated (T. 180). She was evaluated by Rhonda Tannehill, Ph.D., who noted, with respect to claimant's behavior:

> During the assessment session, Alexis displayed a moderate response style. When confronted with a statement she did not understand, she would ask for clarifications. She remained on task and was talkative and friendly during most of the session. At one point during the session, Alexis did cry and appeared anxious but was unable to state why she was anxious.
>
> Alexis was oriented x3. Her thought processes appeared to be logical and coherent . She denied suicidal or homicidal ideations, delusions, hallucinations, physical abuse, or sexual abuse. She does fear animals and will avoid being near animals. However, she does help take care of the family parakeet. Alexis indicated that her emotions at times feel as if she is on a "roller coaster." She can be very happy and then become very sad. Typically, she feels happy. Alexis does daydream frequently. The daydreams are mostly about her future career. She wants to be a lawyer or a judge. Her reason is that she likes to argue. Her preference is medical law or injury law. Alexis stated that she has difficulty remaining on task. She is easily distracted particularly in Language Arts and science. Alexis does not feel that she has many friends. She has three friends with which she plays and talks. She stated that she does not get along well with her parents. She has difficulty getting along with her siblings. When questioned about her rocking, she stated that it was a habit. She rocks at home and in the car but not at school. She is unable to control the rocking at home even when she tries to make herself stop. While she rocks, she thinks and daydreams. The rocking calms her and makes her happier.
>
> Based on Alexis' effort during the assessment session, the obtained results are considered to be a valid estimate of her true personality traits.

(T. 180-181). Dr. Tannehill summarized:

> Alexis is a 12 year, 3 month old female referred for evaluation because of continual rocking, daydreaming and inattention. Results of this assessment indicate behavior difficulties in opposition, inattention, impulsivity, hyperactivity, defiance, avoidance, anxiety, depression, shyness, perfectionism, social problems, psychosomatic complaints, restlessness, [], emotional lability, and cognitive inattention **as rated by the mother**. Behavior difficulties are noted in anxiety, depression, social problems, thought problems, attention problems, emotional problems, cognitive inattention, anger control problems, hyperactivity, impulsivity, and aggression **as rated by self**. Adaptive behavior difficulties are noted in self care, home living, social skills, community use,

AO72A
(Rev. 8/82)

leisure skills, work skills, functional academics, health and safety skills, and self-
direction **as rated by the mother**.

(T. 185). (emphasis supplied) The evaluation was completed in one and one half (1½) hours, during which the following tests were administered: Conners-Wells' Adolescent Self-Report Scale (CASS); Conners Parent Rating Scale-Revised (CPRS-R); Youth Self Report (YSR); Behavior Dimension Scale (BDS); and Adaptive Behavior Evaluation Scale-Revised (ABES-R) (T. 180-181).

The claimant's seventh grade teacher, Diane Bramlett, submitted a completed School Questionnaire dated February 4, 2002 (T. 81-84). Ms. Bramlett indicates that, at the time, she had known the claimant for one and a half (1½) years, and taught her for one and a half (1½) hours, Monday through Friday (T. 82). In Ms. Bramlett's estimation, claimant had no significant problems in: communication; social functioning; concentration, persistence and pace; or, behavioral problems. There had been no worsening of the claimant's functioning or behavior (T. 82-83). There had been no interventions for the claimant's behavior problems. Ms. Bramlett had no knowledge of claimant being coached by anyone, to obtain SSI benefits (T. 83-84). In conclusion, Ms. Bramlett observed "Alexis is a very well behaved student. She leaves my room to check her blood sugar, if needed she eats the appropriate snack." (T. 84).

Plaintiff complained with respect to claimant's vision, however, she was seen by Dr. Chapman, O.D., on June 22, 2002, and he summarized, as follows:

> Summary: refraction stable and ocular health normal (no signs of diabetic retinopathy). Recommended evaluation with medical doctor for her blood sugar instability. Annual visual examinations or as needed.

(T. 176). After a June 26, 2003 examination, he again referred to claimant's reportedly unstable

blood sugar levels, but found that her vision was "ok", and although there had been a small myopic increase in the right eye, the left eye remained the same. There was no evidence of retinopathy, and all other evaluations were found to be normal (T. 222).

After carefully examining the record, the undersigned concludes that the ALJ's determinations are supported by substantial evidence in the record. There is ample evidence that suggests that when claimant takes medication, her functioning greatly improves. When, for whatever reason, she is non compliant with her medication, her conditions worsen (T. 199, 198, 197). Claimant has indicated that therapy has helped her with her depression, which is believed to stem from her diabetic condition (T. 197). To the contrary, there is little evidence of an impairment or combination of impairments which seriously interferes (marked) with a the claimant's ability to independently initiate, sustain, or complete activities in two or more broad areas of functioning, or which interferes very seriously (extreme) with her ability to independently initiate, sustain or complete activities, in one domain.

The record indicates that claimant's anti-depressant medication has successfully and significantly controlled her depression (T. 102, 215, 217, 209, 208, 206, 202, 198, 194, 188). If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993)*. Furthermore, the ALJ properly focused on the claimant's ability to function despite her impairments, rather than on diagnoses. See *Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir.1990)*. The undersigned concludes that the ALJ's findings, specific to each of the six domains, are supported by substantial evidence of record.

Accordingly, based on the foregoing, it is found that the plaintiff's arguments are

without merit and, therefore, rejected.

**Conclusion:**

Accordingly, the undersigned concludes substantial evidence of record exists to support the ALJ's decision that the claimant's impairments are neither medically nor functionally equal to a listed impairment, and ultimately, that the claimant is not disabled. Therefore, it is determined that the decision of the ALJ, denying benefits to the plaintiff on behalf of the claimant, should be affirmed and the Complaint should be dismissed with prejudice.

ENTERED this 16th day of September, 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)